**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
ALEXANDER ORTIZ,

               Plaintiff,

      -against-

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, Detective Luis A. Salazar
(Sh. 908), in his official and individual capacity, under
Color of State Law, NASSAU COUNTY DISTRICT
ATTORNEY, Madeline Singas, ASSISTANT
DISTRICT ATTORNEY, Victoria Mauri and her
direct Jane Doe and John Doe supervisors, in their
official and individual capacities, under Color of State
Law, NASSAU COUNTY DEPARTMENT OF
SOCIAL SERVICES, and its John Doe and Jane Doe
Caseworkers, in their official and  individual
capacities, and under Color of State Law, and
NASSAU UNIVERSITY MEDICAL CENTER, and
its John Doe and Jane Doe Doctor(s) and Sane
Nurse(s),

               Defendants.

-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
20-CV-3469 (OEM) (SIL)

ORELIA E. MERCHANT, United States District Judge:

       On July 31, 2020, plaintiff Alexander Ortiz ("Plaintiff") commenced this action asserting

federal and state law claims arising from his arrest and indictment for child sexual abuse.

Specifically, Plaintiff alleges false arrest and imprisonment, abuse of process, malicious

prosecution, intentional infliction of emotional distress, defamation, and violations of the Fourth

and Fourteenth Amendments under 42 U.S.C. § 1983 against defendants County of Nassau

("Nassau County"), Nassau County Police Department ("NCPD"), Luis Salazar ("Detective

Salazar"), Nassau County District Attorney Madeline Singas ("DA Singas"), Assistant District

Attorney Victoria Mauri ("ADA Mauri"), and Nassau County Department Of Social Services

("DSS"), (collectively the "County Defendants").  *See generally* Complaint ("Compl."), ECF 1.

Plaintiff also brings claims for false imprisonment and "incorporates" each allegation set forth in the Complaint for violations of the Fourth and Fourteenth Amendments via Section 1983 against defendant Nassau University Medical Center ("Defendant Medical Center"). *Id.* Plaintiff seeks legal fees from all Defendants under 42 U.S.C. § 1988. *Id.*

Before the Court are County Defendants' motion for summary judgment, *see* Cnty. Defs. Not. of Mot., ECF 67, and the Defendant Medical Center's motion for summary judgment, *see* Med. Ctr. Not. of Mot., ECF 74, on all claims. For the following reasons the County Defendants' and Defendant Medical Center's motions are **GRANTED**.

## BACKGROUND[1]

Three minor children, B.A., O.A. and T.A., were adopted on or about January 21, 2014, in the State of Arkansas and later brought to Hempstead, New York, by their adoptive mother, Chriscelle A. Pl. Cnty. 56.1 ¶¶ 1-2.[2] On or about January 22, 2018, B.A. ran away from home.

---

[1] The facts set forth herein are drawn from County Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Cnty. Defs. 56.1"), ECF 69; Declaration of Oscar Michelen in Support of County Defendants' Motion for Summary Judgement ("Michelen Decl."), ECF 68, and exhibits attached thereto; Plaintiff's Counter Statement to the County's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pl. Cnty. 56.1"); Declaration of Michael J. Langer in Support of Plaintiff's Opposition to County Defendants' Motion for Summary Judgment ("Langer Decl."), ECF 71-1, and the exhibits attached thereto; County Defendants' Reply to Plaintiff's Rule 56.1 Statement ("Cnty. Defs. 56.1 Reply"), ECF 73; Medical Center's Statement of Undisputed Facts ("Med. Ctr. 56.1"), ECF 74-1; Plaintiff's Counter Statement of Undisputed Facts to the Medical Center's 56.1 ("Pl. Med. Ctr. 56.1"), ECF 76-4; Medical Center's Reply to Plaintiff's 56.1 Statement ("Med. Ctr. Reply 56.1"), ECF 74-3; and various witness depositions ("[Name] Dep."). Citations to a party's Rule 56.1 Statement incorporate by reference the documents cited therein. Where facts stated in a party's Rule 56.1 Statement are supported by testimonial or documentary evidence and denied with only a conclusory statement by the other party, the Court finds such facts to be true. E.D.N.Y. Local Rule 56.1 (c)-(d).

[2] Plaintiff responds this and other statements in the County Defendants' 56.1 Statement stating that "Said evidence is not admissible pursuant to FRCP 56(c), Local Rule 56.1(d) and Court Rule III(C)(5)." However, Plaintiff offers no substantive basis for the objections. Because Plaintiff does not dispute the facts and because "Asserting an issue without advancing an argument does not suffice to adequately raise" it, *Cascianti v. Nesbitt*, 392 F. App'x 887, 889 (2d Cir. 2010), the Court declines to deem any statements inadmissible based on Plaintiff's conclusory and unsubstantiated objections. *See Chalfen v. E. Williston Union Free Sch. Dist.*, 2023 WL 2815719, at *3, n.1 (E.D.N.Y. Feb. 27, 2023). The Court addresses *infra* Plaintiff's arguments as to admissibility contained within its opposition brief. Further, the Court does not consider arguments, legal conclusions, or unsubstantiated opinions contained in the parties' 56.1 statements. *See, e.g., Rodriguez v. Schneider*, 95-CV-4083, 1999 WL 459813, at *1, n.3 (S.D.N.Y.) ("Rule 56.1 statements are not argument. They should contain factual assertions with citation to the record. They

*Id.* ¶ 3.  When she later appeared at school, NCPD officers interviewed B.A.  *Id.* ¶¶ 3-4.  B.A. reported to officers that Plaintiff, the boyfriend of Chriselle A.'s natural daughter, was sexually abusing T.A., who was ten years old at the time.  *Id.* ¶¶ 2-4.  The three children and their adoptive mother were brought in to the "Safe Center," a private entity which operates a Child Advocacy Center.  *Id.* ¶¶ 5-7.  Detective Salazar, an officer in the Special Victims Bureau within the NCPD, was assigned to investigate the allegations against Plaintiff.  *Id.* ¶¶ 9, 13.  Detective Salazar conducted forensic interviews of the three children, which were video and audio recorded.  *Id.* ¶ 14.  Defendants have provided the Court with the video footage.[3]  *See* Ex. C, ECF 68-3.

During B.A.'s interview, who was then age 15, B.A. stated that T.A. told her and their cousin that Plaintiff had attempted to rape her and to force her to perform oral sex on him.  B.A. stated that T.A. also said that Plaintiff had threatened to kill T.A. if she told anyone.  B.A. stated that she responded by telling T.A. not to tell anyone.  B.A. said she decided not to tell her adoptive mother because she previously accused B.A. of being a "pathological liar."  B.A. also reported that her sister, O.A., told her that O.A. had seen T.A. and Plaintiff kissing on the lips.

During O.A.'s interview, who was then age 13, O.A. stated that she was not sexually abused by Plaintiff, but that T.A. told her Plaintiff had sexually abused T.A.  O.A. reported seeing Plaintiff kissing T.A. on the lips.

---

should not contain conclusions." (emphasis omitted)), *aff'd*, 56 F. App'x 27 (2d Cir 2003); *Williams v. City of New York*, 19-CV-3347 (LJL) (JLC) (S.D.N.Y. Jan. 14, 2022).

[3] The Court may rely upon video evidence to resolve questions of fact on a motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 379-80 (2007) (considering a motion for summary judgment, the court viewed the facts in the light depicted by videotape); *accord Fabrikant v. French*, 691 F.3d 193, 215 n.6 (2d Cir. 2012) (affirming grant of summary judgment based upon probable cause and qualified immunity relying in part on video evidence where plaintiff did not dispute the accuracy of video).

During T.A.'s interview, who was then age 10, T.A. reported that Plaintiff had sexually abused her both orally and vaginally over the course of two years.  T.A. estimated eleven separate incidents of abuse had occurred and described several in detail.

After the interview, T.A. was taken to the Medical Center for forensic evaluation where she was examined by Sexual Abuse Nurse Examiner Barbara Heffernan ("Heffernan").  Pl. Cnty. 56.1 ¶¶ 29-30.  Heffernan's report noted that during the exam T.A. was talkative, cooperative, *id.* ¶ 43, and "alert and oriented" across person, place, time, and situation, *id.* ¶ 40, and that T.A. told Heffernan that Plaintiff put his penis in her mouth, vagina and "backside," *id.* ¶ 44.  Heffernan then performed a physical exam on T.A. by observation and colposcope.  *Id.* ¶ 45.  Heffernan noted a transection of the hymen and bruising around the anus.  *Id.* ¶ 47.  Heffernan testified before the Grand Jury that her physical findings were consistent with T.A.'s recount of sexual abuse.  *Id.* ¶ 50.

Heffernan later testified in her deposition that her physical exam was consistent with T.A.'s allegations but that, without DNA evidence, the findings were "inconclusive" as to actual sexual abuse.  *Id.* ¶¶ 48-49.  She testified that there was nothing that called into question T.A.'s mental competency and that she made her findings "in good faith and to the best of [her] ability."  *Id.* ¶¶ 42, 52; *see* Heffernan Dep. at 117:5-19.  Plaintiff disputes the accuracy of Heffernan's findings and asserts that there was no evidence of a hymen transection.  Cnty. Defs. 56.1 Reply ¶ 105.  The County Defendants dispute this.  *Id.*  At the time, no doctor had reviewed the physical evidence. *Id.* ¶ 106.

Heffernan is required to report suspected child abuse under New York State Law.  Pl. Cnty. 56.1 ¶ 37.  On January 22, 2018, Heffernan reported to Detective Salazar that T.A. showed signs of sexual abuse.  *Id.* ¶ 32.

Detective Salazar determined that there was probable cause for the arrest; ADA Bresnahan discussed with Detective Salazar what charges could be supported by the evidence. *Id.* ¶ 54. On January 25, 2018, without first obtaining a warrant, Detective Salazar placed Plaintiff under arrest for Course of Sexual Conduct Against a Child in the First Degree. *Id.* ¶ 53; Cnty. Defs. 56.1 Reply ¶ 102. The case was assigned to the ADA Mauri in the Special Victims Unit after Plaintiff's arrest. Pl. Cnty. 56.1 ¶ 55. ADA Bresnahan took over the case while ADA Mauri was on leave. *Id.* ¶ 58. Bresnahan made the decision to prosecute Plaintiff based on the medical evidence Heffernan provided – and without any other physical evidence. Cnty. Defs. 56.1 Reply ¶ 107. ADA Bresnahan presented a video of T.A.'s testimony, Pl. Cnty. 56.1 ¶ 58, and Heffernan testified before the Grand Jury, *id.* ¶ 50. ADA Bresnahan later testified that she "wouldn't have put Nurse Heffernan in the grand jury." Cnty. Defs. 56.1 Reply ¶ 108; Bresnahan Dep. 76:13-15. The parties dispute whether "best practices" required a doctor, not a nurse, to determine whether a hymen transection occurred. Cnty. Defs. 56.1 Reply ¶¶ 109-10. On March 1, 2018, the Grand Jury returned an indictment charging Plaintiff with Course of Sexual Conduct Against a Child in the First Degree. Pl. Cnty. 56.1 ¶ 59.

In March 2019, as the District Attorney's office prepared to bring the case to trial, the office asked Dr. Jennifer Canter, a board-certified child abuse pediatrician, to review Heffernan's findings and to serve as a potential trial witness. *Id.* ¶¶ 61-62; Bresnahan Dep. at 64:12-22, 66:19-20. Dr. Canter reviewed the medical records and colposcopic photos from Heffernan's examination and disagreed with Heffernan's findings. *Id.* ¶ 61; Michelen Decl. Ex. K, ECF 68-11. The parties dispute whether Dr. Canter determined there was no transection of the hymen. *See* Cnty. Defs. 56.1 Reply ¶ 106.

On April 2, 2019, ADA Mauri notified Plaintiff's criminal defense attorney of Dr. Canter's disagreement, noting that Dr. Canter "did not believe there was a transection and c[ould] not conclude whether what appeared to be bruising to the child's anus was bruising or a vein." Pl. Cnty. 56.1 ¶ 63; Michelen Decl. Ex. K. The letter stated that the District Attorney's office would be "representing the case to the Grand Jury without presenting the medical records" and would "not be using the injuries at trial." Pl. Cnty. 56.1 ¶¶ 64-65; Michelen Decl. Ex. K.

In December 2018, Plaintiff's attorney subpoenaed T.A.'s medical records, which were delivered to the New York Supreme Court 10th Judicial District in December 2018 and reviewed by Judge Robert A. McDonald's law secretary. Pl. Cnty. 56.1 ¶ 66. Medical records from Stony Brook Hospital, dated May 31, 2018, showed that T.A. was experiencing serious psychiatric issues and maintained her accusations of sexual abuse by Plaintiff. *Id.* ¶¶ 67-68. T.A. had been admitted to Stony Brook Hospital after an incident at school when she expressed suicidal ideation, reported nightmares and flashbacks of sexual abuse, and fear that her abuser would hurt her again. Pl. Cnty. 56.1 ¶ 68; Michelen Decl. Ex. M, ECF 68-13. T.A.'s Stony Brook records were released to the District Attorney's office and Plaintiff's attorney on May 10, 2019. Pl. Cnty. 56.1 ¶ 69; Michelen Decl. Ex. N, ECF 68-14.

On June 26, 2019, ADAs Bresnahan and Mauri met with T.A. to ascertain whether she could re-present testimony to a Grand Jury and testify at trial. *Id.* ¶ 70. At that time, T.A. was living at a residential treatment facility for "young, emotionally traumatized disturbed children." *Id.*; Michelen Decl. Ex. N. ADAs Bresnahan and Mauri observed that T.A. was exhibiting "delusional and incoherent behavior" and that she had an active history of "visual hallucinations." Pl. Cnty. 56.1 at ¶ 71; Michelen Decl. Ex. N; Mauri Dep. at 152:7-22.

ADA Mauri determined that "it [was] not in the best interest of [T.A.] to have her testify and that [the District Attorney's] office c[ould] not go forward on this case." Michelen Decl. Ex. N; Pl. Cnty. 56.1 ¶ 72. Without T.A.'s testimony, "forensic or medical evidence," or "admissions by the Defendant," ADAs Bresnahan and Mauri were left with B.A. and O.A., who had "their own social and psychological considerations." Therefore, ADAs Mauri and Bresnahan decided to drop the case. Michelen Decl. Ex. N.; Pl. Cnty. 56.1 ¶¶ 73, 75. On July 31, 2019, they requested approval from their office to seek dismissal of the case pursuant to Criminal Procedure Law 210.20 (1) (H), which authorizes the dismissal of an indictment due to the existence of a legal impediment. Pl. Cnty. 56.1 ¶¶ 74, 76; *see* Michelen Decl. Ex. N.

On August 1, 2019, ADA Mauri moved to dismiss the indictment, stating that "It is clear the child cannot testify at this time and we do not seek to further traumatize her." *Id.* ¶¶ 77-78. When asked by Judge McDonald whether the District Attorney's office believed it could satisfy a reasonable jury that Plaintiff was guilty beyond a reasonable doubt, ADA Mauri explained that they believed it would not be "appropriate" to have T.A. testify given the circumstances and that the District Attorney's office "wouldn't be able to make out a case without her." *Id.* ¶¶ 79-80. The Court granted the motion to dismiss the indictment. *Id.* ¶ 84. The dismissal of the criminal case is a termination "in favor of the accused" and, under New York Criminal Procedure Law § 160.60, the arrest and prosecution of Plaintiff was deemed a nullity and Plaintiff was restored to the status occupied before the arrest and prosecution. Cnty. Defs. 56.1 ¶ 115.

Plaintiff was incarcerated in pre-trial detention for approximately one year. *Id.* ¶ 103. He was released on bail in early 2019 before the indictment was dismissed. *Id.* Plaintiff was thereafter detained by Immigration and Customs Enforcement for several months. *Id.* ¶ 104. Plaintiff denied all allegations of wrongdoing throughout the pendency of the criminal case. *Id.* ¶ 112. Warrants,

subpoenas, DNA evidence, surveillance videos, and jail records obtained during the course of the investigation produced zero evidence against Plaintiff. *Id.* ¶ 113.

Plaintiff filed this action on July 31, 2020, *see* Compl., and on July 12, 2023, this case was reassigned to the undersigned. Following the close of discovery, the County Defendants and the Medical Center moved for summary judgment.

## LEGAL STANDARD

A movant is entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322. "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under governing law." *Id.*

The moving party bears the burden of showing that they are entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the

party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). Therefore, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

If the moving party meets its burden of demonstrating the absence of a dispute over material fact, then the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Sheet Metal Workers' Nat'l Pension Fund v. Accra Sheetmetal, LLC*, 993 F. Supp. 2d 245, 248 (E.D.N.Y. 2014). The nonmoving party cannot rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). If the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." *Anderson* 477 U.S. at 249-50 (citations omitted).

## DISCUSSION

### A. County Defendants' Motion for Summary Judgment

#### 1. Liability Against the NCPD and DSS

The NCPD and DSS are not proper defendants. "It is well-established that under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued.'" *Martinez v. Cnty. of Suffolk*, 999 F. Supp. 2d 424, 429 (E.D.N.Y. 2014) (quoting *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y.2002)). Since the police department and DSS and are merely administrative arms of Nassau County, the claims against them are dismissed. *See, e.g.*,

*Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 551 (E.D.N.Y. 2013) (dismissing § 1983 claims because DSS is not a suable entity); *Davis*, 224 F. Supp. 2d at 477 (same as to police department).

### 2. Absolute Immunity: DA Singas & ADA Mauri

The County Defendants argue that DA Singas and ADA Mauri are absolutely immune from liability because each of their actions were in made their roles as prosecutors and advocates, not as investigators. County Defendants' Memorandum in Support of Motion for Summary Judgment ("Cnty. Defs. Mem."), ECF 70, at 19-20. Prosecutors performing duties related to their prosecutorial function are protected from liability under Section 1983 and state law by absolute immunity. *Shumeli v. City of New York*, 424 F.3d 231, 237-38 (2d Cir. 2005); *accord Buckley v. Fitzsimmons*, 509 U.S. 259, 260 (1993). "[T]he prosecutor has absolute immunity for the initiation and conduct of a prosecution 'unless [he] proceeds in the clear absence of all jurisdiction.'" *Id.* (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987). In determining whether absolute immunity applies, Courts must take a "functional approach," examining "the nature of the function performed, not the identity of the actor who performed it." *Simon v. City of New York,* 727 F.3d 167, 171 (2d Cir. 2013), *cert. denied* 134 S. Ct. 1934 (2014) (citations omitted).

Given the Court's dismissal of Plaintiff's claims on the merits, *infra*, the Court need not independently address Defendants' absolute immunity arguments.

### 3. Federal and State False Arrest and Imprisonment Claims

The County Defendants contend that probable cause to arrest Plaintiff existed based only on Detective Salazar's forensic interviews of T.A. and her sisters, notwithstanding any medical evidence. Cnty. Defs. Mem. at 4-5; Cnty. Defs. Reply at 1-4. Plaintiff responds that T.A.'s and her sisters' statements are hearsay and are therefore cannot be relied upon for the purposes of this motion. Plaintiff's Opposition to the County Defendants' Motion for Summary Judgment ("Pl.

Cnty. Opp."), ECF 71, at 10.  Plaintiff argues that the charges against him "required medical and other evidence" to corroborate T.A.'s testimony.  *Id.* at 10-11.  Moreover, Plaintiff argues that the evidence prosecutors did rely on was problematic.  Plaintiff proffers expert witness testimony by Dr. Ellen Treacy ("Dr. Treacy") stating that the forensic interviews of the child witnesses were "faulty" and that the County Defendants engaged in "confirmatory bias."  *Id.* at 12.

### a.  Applicable Law

Section 1983 provides liability against state and local actors for deprivation, under the color of state law, "of any rights, privileges or immunities secured by the constitution."  42 U.S.C. § 1983.  Federal false arrest claims derive from the Fourth Amendment right to be free from unreasonable seizures – including the right to be free from arrest without probable cause.  *See Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).

The elements of a false arrest claim under the Fourth Amendment are "substantially the same" as the elements for false arrest under New York law.  *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021).  A plaintiff claiming false arrest or false imprisonment under New York law must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Id.*; *accord Williams v. Nat'l R.R. Passenger Corp. (Amtrak)*, 830 F. App'x 46, 47 (2d Cir. 2020) (quoting *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018)).

"[P]robable cause is an absolute defense to a false arrest claim."  *Jaegly*, 439 F.3d at 152; *accord McCullough v. Graves*, 24-CV-506, 2024 WL 4615821, at *2 (2d Cir. Oct. 30, 2024) ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff.").  If, as is the case here, the

arrest "is not made pursuant to a judicial warrant, the defendant . . . bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *see also Jenkins v. City of N.Y.*, 478 F.3d 76, 88 (2d Cir. 2007) ("summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable."); *Niles v. O'Donnell*, 17-CV-1437 (LTS) (BCM), 2019 WL 1411068, at *7 (S.D.N.Y. Feb. 21, 2019) (finding "no difficulty concluding" that defendants had probable cause to arrest the plaintiff based on a potential victim's statements and therefore dismissing false arrest claim).

Probable cause exists when a law enforcement officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (citations omitted). "To determine the existence of probable cause, a court considers the totality of the circumstances based on a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest." *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) (citing *Jenkins*, 478 F.3d at 90, and *Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013)). "The court considers those facts available to the officer at the time of the arrest and immediately before it." *Id.* (citations omitted). "Absent circumstances that raise doubts as to the victim's veracity, a victim's identification is typically sufficient to provide probable cause." *Stansbury*, 721 F.3d at 90 (citations omitted).

### b. Available Evidence: Witness Interviews

Plaintiff's contention that video interviews of the child witnesses and the statements contained therein are inadmissible hearsay is without merit.  *See* Pl. Cnty. Opp. at 4, 10.  The videos and the statements contained therein are not hearsay because they not offered to prove that Plaintiff committed the crimes he was accused of.  *See* FED. R. EVID. 801(c) (defining hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, "offer[ed] in evidence to prove the truth of the matter asserted.").  Rather, the statements are offered to show the information available to the arresting officers when deciding to arrest Plaintiff.  Thus, they are offered to show the effect on the listener and are excepted from the rule against hearsay.  *See id.* advisory committee note; *see also United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("a statement offered to show its effect on the listener is not hearsay.").  "Such evidence is properly before a fact finder charged with determining whether, in light of the then-available information, a police officer had probable cause."  *Tuccio v. Papstein*, 307 F. App'x 545, 547 (2d Cir. 2009) (citing *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) ("When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it." (internal quotations omitted))); *see also Golden v. City of New York*, 418 F. Supp. 2d 226, 233 (E.D.N.Y. 2006) (witness statements leading to plaintiff's arrest are admissible where "offered to show the information [arresting officer] had when he arrested the plaintiff" which "may also be viewed as showing [officer's] state of mind at the time of the arrest.").

The information the County Defendants obtained is therefore properly before the Court and will be considered for its effect on the probable cause determination.

### c.  Probable Cause

At the heart of Plaintiff's false arrest and imprisonment claim is the allegation that officers lacked probable cause to arrest him.  To the contrary, County Defendants argue that T.A.'s statements, as corroborated by her sisters, created probable cause.  Cnty Defs' Mem. at 4.  In opposition, Plaintiff asserts that accusations of sexual assault must be corroborated with "medical and other evidence," "especially since [T.A.'s] assertions were drawn into question as a result of her psychiatric delusions."  Pl. Cnty. Opp. at 11.

"'[A]bsent circumstances that raise doubt as to the victim's veracity,' a victim's report of a crime is generally enough, by itself, to establish probable cause." *Koester v. Lanfranchi*, 288 F. App'x 764, 766 (2d Cir. 2008) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)); *accord Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("police officers, when making a probable cause determination, are entitled to rely on the victim's allegations that a crime has been committed.").  There is no genuine dispute that T.A. identified Plaintiff as having raped her on multiple occasions.  There is also no genuine dispute that T.A.'s sisters, O.A. and B.A., reported that T.A. had told them Plaintiff solicited oral sex from her, and that O.A. witnessed T.A. and Plaintiff kissing.  These statements are sufficient to justify Plaintiff's arrest.  *See Stansbury*, 721 F.3d at 90 (2d Cir. 2013).

Plaintiff claims that T.A. "suffer[ed] from severe mental health issues" and experienced "psychiatric delusions," which raise doubt as to the veracity of her accusations.  Pl. Cnty. Opp. at 11.  However, Defendants assert, and Plaintiff does not dispute, that Defendants were not in possession of the T.A.'s medical records until May 2019 – well after Plaintiff's arrest and indictment.  *See* Pl. Cnty. 56.1 at ¶ 69.  Likewise, Plaintiff does not dispute that ADAs Bresnahan and Mauri were not aware of T.A.'s psychiatric trauma until June 26, 2019.  *Id.* ¶¶ 70-71; Michelen

Decl. Ex. N at 4.  Shortly thereafter, on August 1, 20219, the indictment against Plaintiff was dismissed.  *Id.* ¶ 77.  Evidence of the child's psychiatric issues, unavailable to the arresting officer at the time of the challenged arrest is irrelevant to the determination of whether probable cause existed.  *See, e.g., Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest."); *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 318 (S.D.N.Y. 2001) ("evidence discovered after the arrest is not admissible with respect to the question of whether there was probable cause.").  Plaintiff has presented the Court with no other information about T.A. or her accusations that was known to Defendants at the time of Plaintiff's arrest that would raise any doubt as to her reliability.  Thus, Defendants had probable cause.

Plaintiff's argument that for probable cause to exist in sexual abuse cases "medical and other evidence" must corroborate a victim's statements is lacking in legal support.  *See* Pl. Cnty. Opp. at 11.    At common law, corroboration was not required in prosecutions for rape or other sexual offense cases.  7 Wigmore, Evidence § 2061 (Chadbourne rev. 1978).  Many states, including New York, gradually required corroboration of a victim's testimony.  However, New York and all other states abolished this requirement decades ago.  *See People v. Fuller*, 50 N.Y.2d 628, 631 (1980) ("We hold that, in the absence of any statutory requirement for corroboration, consonant with the reflection of social attitudes in prevailing legislative policy, the sworn testimony of a child complainant under the age of 12 need not be corroborated in a prosecution for her forcible rape.").  Plaintiff's argument is rooted in an antiquated concept of the law.

Plaintiff argues that probable cause is questionable because, according to Plaintiff's expert witness Dr. Treacy, Defendants' "entire interview process, techniques, and practice was faulty, such that the County Defendants engaged in 'confirmatory bias' which would not have occurred

if correct techniques were employed." Pl. Cnty. Opp. at 12.  Dr. Treacy opines that Defendants'
investigation diverged from best practices in that the County Defendants failed to integrate
"alternative hypotheses or rival explanations" into the forensic interviews of T.A. and her sisters
which "caused a taint of the entire investigation."  Affidavit of Dr. Treacy ("Dr. Treacy Aff."), Pl.
Cnty. Opp Ex. 4, ECF 71-4, at ¶ 4.  This opinion does not change the Court's analysis.  It is well
established that failure to follow "best practices" does not vitiate the existence of probable cause.
*Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006).  "'Although a better procedure may [be] for
the officers to investigate the plaintiff's version of events more completely, the arresting officer
does not have to prove plaintiff's version wrong before arresting him.  Nor does it matter that an
investigation might have cast doubt upon the basis for the arrest.'"  *Id.* (quoting *Curley v. Village
of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)).  The function of the police is to apprehend a suspect,
"not to finally determine guilt through a weight of the evidence."  *Id.* (quoting *Krause v. Bennett*,
887 F.2d 362, 372 (2d Cir. 1989)).  Accordingly, none of Dr. Treacy's critiques rebut the
presumption that Plaintiff's arrest was supported by probable cause.[4]  *See Hayes v. City of New
York*, 12-CV-4370 (LAK), 2014 WL 4626071, at *10-11 (S.D.N.Y. Sept. 15, 2014) (finding no
error in defendant's probable cause finding where, despite purportedly inadequate investigation,
there was probable cause for the arrest); *see also Gonzalez v. Hahl*, 17-CV-373 (NAM) (ML),
2020 WL 1530741, at *6 (N.D.N.Y. Mar. 31, 2020), *aff'd*, 850 F. App'x 127 (2d Cir. 2021);
*McGrier v. City of New York*, 16-CV-5667 (VEC), 2019 WL 1115053, at *7 (S.D.N.Y. Mar. 11,
2019), *aff'd*, 849 F. App'x 268 (2d Cir. 2021).

---

[4] Moreover, "the existence of probable cause is a question of law that is not properly the subject of expert testimony."
*Rizzo v. Edison, Inc.*, 172 F. App'x 391, 394 (2d Cir. 2006).  However, expert testimony regarding whether a defendant
deviated from best practices of police investigations, as Dr. Treacy offers here, may be admissible to assist the trier of
fact.  *Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017).  In this regard, nothing in Dr. Treacy's report raises
doubts as to its existence in this case.

For these reasons, no reasonable juror could find that Plaintiff's arrest lacked probable cause. The County Defendants' motion for summary judgment is granted as to Plaintiff's federal and state-law false arrest claims.

### 4. Federal and State Malicious Prosecution Claims

The County Defendants argue that Plaintiff's claim for malicious prosecution must be dismissed because Detective Salazar did not initiate the prosecution against Plaintiff, probable cause did not dissipate before commencing the prosecution, and because there was no evidence of malice. Cnty. Defs. Mem. at 7-9. Plaintiff responds that Detective Salazar was centrally involved in initiating the prosecution and that the County Defendants' attempt to gather evidence, while failing to investigate T.A.'s psychiatric history, is evidence of malice. Pl. Cnty. Opp. at 15-18.

### a. Applicable Law

To establish a claim for malicious prosecution under New York law, plaintiff must show "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000) (citations omitted). As with false arrest, claims for malicious prosecution under both New York Law and the Fourth Amendment are nearly identical, except that plaintiff must show, in addition, "that there was [] a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Id.*

### b. Application

The County Defendants concede that dismissal of the prosecution without a conviction meets the fourth element: the prosecution was terminated in Plaintiff's favor. County Defendants' Reply ("Cnty. Defs. Reply."), ECF 72, at 9 (citing *Thompson v. Clark*, 596 U.S. 36, 49 (2022)).

Further, Plaintiff's detention was more than an adequate "deprivation of liberty . . . pursuant to legal process" for Fourth Amendment purposes. *Singer*, 63 F.3d at 117 (citations omitted). The remaining issues before the court are whether the County Defendants initiated a prosecution against Plaintiff, whether probable cause existed to commence the prosecution, and whether the decision to charge Plaintiff was motivated by malice.

As with a claim for false arrest, probable cause is a complete defense to a claim for malicious prosecution. *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010). However, "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury*, 721 F.3d at 95. In this context, the determination of probable cause means "probable cause to believe that [the prosecution] could succeed." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). That is, if the "facts and circumstances . . . would lead a reasonably prudent person to believe the plaintiff guilty," then sufficient probable cause exists. *Frost*, 980 F.3d at 243. Whereas courts in the false arrest context are limited to considering only the facts leading up to the arrest in determining whether probable cause exists, *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012), in a malicious prosecution action, "probable cause is measured as of the time the judicial proceeding is commenced," such as when plaintiff is arraigned, *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). The evidence supporting probable cause in a malicious prosecution case must be admissible because a prosecution would not likely succeed based on inadmissible evidence. *See Walker v. Carrozzo*, 664 F. Supp. 3d 490, 517 (S.D.N.Y. 2023) ("[I]n instances where evidence 'would clearly not be admissible,' 'there would be no probable cause to believe that the prosecution could succeed.'" (quoting *Boyd*, 336 F.3d at 77)).

"Where, as here, a grand jury indicted the plaintiff on the relevant criminal charge, New York law creates a presumption of probable cause . . . ." *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015). In assessing the presumption of probable cause in "a malicious prosecution claim under New York law, courts 'may not weigh the evidence upon which the police acted or which was before the Grand Jury after the indictment has issued.'" *Debrosse v. City of New York*, 739 F. App'x 48, 50 (2d Cir. 2018) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)). Instead, the presumption of probable cause "can only be overcome by evidence that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Bermudez*, 790 F.3d at 377 (citations omitted). "[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003).

Plaintiff contends that the grand jury indictment was "manipulated" through the presentation of "faulty" evidence, thus implying that the indictment was procured in bad faith. *See* Pl. Cnty. Opp. at 3, 8. Plaintiff otherwise relies upon the arguments he raised in connection to probable cause for Plaintiff's arrest. Even accepting those arguments, they are insufficient to defeat the presumption of probable cause for the purpose of his malicious prosecution claim. *See Soto v. City of New York*, 132 F. Supp. 3d 424, 456 (E.D.N.Y. 2015) (citing *Ramashwar v. City of New York*, 231 F. App'x 26, 27 (2d Cir. 2007); *see also Banno v. City of New York*, 06-CV-2270 (RJS), 2015 WL 845709, at *5 (S.D.N.Y. Feb. 25, 2015) (finding that plaintiff did not overcome the presumption where he "merely assert[ed] that for the same reason[s] there [was] a question of fact as to probable cause for the false arrest claim").

Plaintiff has failed to adduce any evidence from which a reasonable juror could conclude that the indictment was procured through fraud, perjury, or other bad faith. Assuming for the sake

of argument that Heffernan's testimony and physical examination were found—approximately a year later—to be incorrect is insufficient: simply raising doubts about probable cause is not enough.  *See Ramashwar*, 231 F. App'x at 27 (Plaintiff "raised some questions of fact" that "merely tend[ed] to show the absence of probable cause.").  The same is true of Plaintiff's argument that the County Defendants relied on Heffernan's report without immediately enlisting a medical doctor to review it.  *See* Pl. Cnty. Opp. at 6.  Plaintiff cannot overcome the presumption of probable cause by claiming the County Defendants failed to follow "best practices" or exhaust every angle of the case.  *Id.*; *see, e.g.*, *Dukes v. City of New York*, 879 F. Supp. 335, 343 (S.D.N.Y. 1995) (finding that plaintiff could not overcome the presumption by "merely claim[ing] that [the officer] failed to interview witnesses and to discover additional evidence");  *Colon*, 60 N.Y.2d at 83 (defendants' "failure to pursue the investigation" and instead relying on circumstantial evidence "is not the equivalent of fraud or the suppression of evidence.").

Moreover, Plaintiff's contention that ADA Mauri admitted Heffernan's conclusions were "incorrect" mischaracterizes the testimony.  *See* Pl. Cnty. Opp. at 12.  Rather, ADA Mauri testified that Dr. Canter found "there was a difference of opinion from that of Barbara Heffernan."  Mauri Dep. at 88:1-4.  A difference of opinion between witnesses cannot overcome the presumption of probable cause.  *Ramashwar v. Espinoza*, 05-CV-2021 (AJP), 2006 WL 23481, at *8 (S.D.N.Y. Jan. 5, 2006) ("Conflicting testimony between witnesses at the criminal trial is not enough to rebut the presumption of probable cause."); *see also DiMascio v. City of Albany*, 93-CV-0452 (TJM), 1999 WL 244648, at *3 (N.D.N.Y. Apr. 21, 1999) ("A mere conflict between witness' trial testimony alone is insufficient to suggest fraud, perjury or the withholding of evidence.").

Having failed to present more than "mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith," *Savino*, 331 F.3d at 72,

Plaintiff has not shown the County Defendants lacked probable cause. Accordingly, the County Defendants are entitled to summary judgment based on the existence of probable cause, and the Court need not examine the other elements of Plaintiff's malicious prosecution claims.

Thus, Plaintiff's federal and state-law malicious prosecution claims are dismissed.

### 5.    Federal and State Abuse of Process Claims

The County Defendants argue that Plaintiff's claims for abuse of process must be dismissed because Plaintiff has not, and cannot, prove County Defendants acted with malice or with any collateral objective. Cnty. Defs. Mem. at 6. Plaintiff responds by arguing that a "plethora of evidence" shows "misconduct" by the County Defendants which "proves their intention was to protect their employment, prevent personal liability, and deny Plaintiff his rights and entitlements" by pursuing charges against him which were "faulty, infirm and based upon outrageous practices and policies to harm the Plaintiff." Pl. Cnty. Opp. at 13.

#### a.    Applicable Law

"To prove abuse of process, plaintiff must show that the defendant (1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Hernandez v. United States*, 939 F.3d 191, 204 (2d Cir. 2019) (citations omitted). "The crux of a malicious abuse of process claim is the collateral objective element." *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011). To establish that element, a plaintiff must show that the defendant "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77; *accord Kanciper v. Lato*, 989 F. Supp. 2d 216, 237 (E.D.N.Y. 2013). "A malicious abuse of process claim thus requires an ulterior purpose such as the infliction of economic harm,

extortion, blackmail, or retribution." *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 391 (E.D.N.Y. 2013). To survive a motion for summary judgment on this claim the Court must find, viewing the record in the light most favorable to Plaintiff, that the facts suggest the County Defendants misused process for an improper purpose.

While the Second Circuit has not resolved whether "probable cause is a complete defense to an abuse-of-process claim under New York law," *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958-59 (2d Cir. 2015), the Circuit has acknowledged "confusion" regarding this issue and has declined to resolve a split among the district courts.[5] *Id.* "Courts that have concluded that the existence of probable cause is not necessarily a complete defense to an abuse-of-process claim have required plaintiffs in such situations to 'demonstrate the elements of abuse of process' without 'relying on any inference from a [purported] lack of probable cause.'" *Carwell v. City of New York*, 21-CV-480 (VEC), 2023 WL 419182, at *4 (S.D.N.Y. Jan. 26, 2023) (quoting *Rao*, 20187 WL 1582289, at *10).

### b.  Application

As an initial matter, the Second Circuit has recognized that an arrest is a clear employment of the criminal process for the purposes of an abuse of process claim. *See, e.g. Weiss v. Hunna*, 312 F.2d 711, 716 (2d Cir. 1963); *Cook v Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). So too is an indictment. *See Savino*, 331 F.3d at 77.

---

[5] *Compare, e.g.*, *Rao v. City of New York*, 14-CV-7422 (RRM) (LB), 2018 WL 1582289, at *10 (E.D.N.Y. March 29, 2018) (finding probable cause is not an "absolute defense" to abuse of process, but "functions as a defense when the only evidence of an improper purpose is the alleged lack of probable cause, and the court finds that there was, in fact, probable cause."); *with Hurley v. Town of Southampton*, 17-CV-5543 (JS) (AKT), 2018 WL 3941944, at *16 (E.D.N.Y. Aug. 13, 2018), *report and recommendation adopted* (Sept. 21, 2018)  ("while the law is not entirely settled on this point, the weight of authority holds that the presence of probable cause negates a claim for abuse of criminal process."); *and with Hickey v. City of N.Y.*, 01-CV-6506 (GEL), 2004 WL 2724079, at *7 (S.D.N.Y. Nov. 29, 2004) ("the existence of probable cause offers a complete defense to [abuse of process]."), *aff'd*, 173 F. App'x 893 (2d Cir. 2006);  *and with Ying Li v. City of N.Y.*, 246 F. Supp. 3d 578, 618 (E.D.N.Y. 2017) ("the Second Circuit has long recognized that probable cause is not a complete defense to malicious abuse of process.").

Having determined that probable cause exists in this case, the next question before the Court is whether there is a genuine dispute of material fact as to County Defendants' alleged intent to harm Plaintiff and a collateral objective. *See Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 249 (E.D.N.Y. 2011) ("If plaintiff can demonstrate the elements of abuse of process – including intent to harm and a collateral objective – without relying on an inference from a lack of probable cause, then such a claim can survive even with probable cause.").

Here, Plaintiff claims the County Defendants' improper purpose was to avoid personal liability and to fabricate a charge to save their own employment. Pl. Cnty. Opp. at 13-14. Plaintiff contends that the County Defendants' investigation of the charges against him was pursued "in a desperate effort to obtain evidence [the County Defendants] never had," which "proves their collateral objective in seeking to harm the Plaintiff." *Id.* at 14.

Courts have permitted abuse of process claims to go forward where the defendant allegedly fabricated charges to shield themselves from liability or save one's own employment. *See, e.g.*, *Crockett v. City of New York*, 11-CV-4378 (PKC), 2015 WL 5719737, at *11 (E.D.N.Y. Sept. 29, 2015); *Besedin v. Cnty. of Nassau*, 18-CV-00819 (NRM) (ST), 2024 WL 4225956, at *16 (E.D.N.Y. Sept. 18, 2024); *Hoyos*, 999 F. Supp. 2d at 391. However, Plaintiff has provided no evidence in support of these assertions. Plaintiff cites to numerous cases in which courts found there was a genuine issue of material fact as to defendants' collateral purpose. In those cases, defendants' misconduct before the employment of the criminal process provided circumstantial evidence to support the asserted collateral purpose. For example, in *Crockett,* the court found there was a genuine dispute of material fact regarding whether the collateral purpose of concealing the defendant-officers' misconduct was to escape employment repercussions and to make it more difficult for plaintiff to pursue legal action. *Crockett*, 2015 WL 5719737, at *11. In that case, it

was undisputed that the defendant-officer shot plaintiff twice before taking him into custody.  *Id.* at *1-2.  In *Gabilly v. City of New York*, there was a genuine issue of material fact of whether defendants used excessive force when arresting plaintiff and whether they had probable cause to accuse him of resisting arrest.  *Gabilly,* 19-CV-11884 (RA), 2021 WL 3667981, at *4-5 (S.D.N.Y. Aug. 17, 2021).  These circumstances in turn raised a question of fact regarding whether defendants pursued charges against plaintiff for the collateral purpose of covering up the use of excessive force.  *Id.*  The same circumstances occurred in *Besedin*: plaintiff's abuse of process claims were permitted to proceed where officers used excessive force to arrest plaintiff and probable cause was genuinely disputed.  *Besedin*, 2024 WL 4225956 at *15-16.  Likewise, in *Hernandez v. Wells*, plaintiff's claim for abuse of process was allowed to proceed to a jury where defendant's arrest of plaintiff "may have violated [Bureau of Prisons] rules," defendant was under a warning that violation of such rules would result in his termination, and probable cause was not conclusively established, because the combination of factors "g[ave] rise to a reasonable inference" that defendant acted with a collateral purpose.  *Hernandez*, 01-CV-4376 (MBM), 2003 WL 22771982, at *9 (S.D.N.Y. Nov. 24, 2003).

Here, Plaintiff has provided no evidence that the County Defendants had a collateral objective in effectuating his arrest and indictment or investigating the allegations against him.  Nor does anything in the record raise an inference that the County Defendants acted for any collateral purpose.  Plaintiff contends the County Defendants acted to "cover up their mistakes, protect their jobs and avoid this lawsuit and avoid liability," but does not explain what those mistakes are and how such actions would put County Defendants' jobs at risk or render them personally liable.  Pl. Cnty. Opp. at 16.  Plaintiff's claim that the County Defendants' investigation "proves their

collateral objective" is merely conclusory. *See id*. at 14. None of the County Defendants' actions raise a reasonable inference they acted with a collateral purpose.

Accordingly, the County Defendants' motion for summary judgment is granted as to Plaintiff's federal and state-law abuse of process claims.

### 6. Intentional Infliction of Emotional Distress

The County Defendants argue that Plaintiff's claims for intentional infliction of emotional distress ("IIED") must be dismissed because Plaintiff cannot show the County Defendants' conduct was sufficiently "extreme and outrageous," Cnty. Defs. Mem. at 23, and because public policy bars such claims, *id.* at 24. Plaintiff responds that, based on the facts surrounding the investigation and prosecution, "it is obvious that the conduct of the County Defendants was intentional and designed to cause Plaintiff severe emotional distress." Pl. Cnty. Opp. at 24.

"To prevail on a claim for IIED, a plaintiff must establish: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Frederique v. Cnty. of Nassau*, 168 F. Supp. 3d 455, 483 (E.D.N.Y. 2016) (citing *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir.1999)).

Because this Court has found that the County Defendants' conduct in the course of Plaintiff's arrest and prosecution was lawful, Plaintiff's claim fails. The conduct complained of is not extreme or outrageous as a matter of law. *See Csoka v. Cnty. of Suffolk*, 85 F. Supp. 2d 117, 123 (E.D.N.Y. 2000) ("A lawful arrest cannot support a claim for intentional or negligent infliction of emotional distress."). Furthermore, "Pursuant to New York law, public policy bars claims for intentional infliction of emotional distress against a governmental entity." *Frederique*, 168 F. Supp. 3d at 483-84.

Plaintiff's claims for intentional infliction of emotional distress are therefore dismissed against the County Defendants.

### 7. Defamation

Plaintiff has brought two causes of action for defamation of character against the County Defendants.  Although the County Defendants seek dismissal on all claims, they make no substantive argument as to Plaintiff's defamation claims beyond including a header in their memorandum of law.  *See* Cnty. Defs. Mem. at 23.  Nevertheless, courts may dismiss a claim as time-barred sua sponte where, as here, it is clear the appliable statute of limitations has run.  *See, e.g.*, *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980) (courts may dismiss on statute of limitations grounds sua sponte); *Baker v. Cuomo*, 58 F.3d 814, 819 (2d Cir. 1995), *cert denied sub nom.*, *Pataki v. Baker*, 516 U.S. 980, *vacated on other grounds*, 85 F.3d 919 (2d Cir. 1996) (en banc) ("[Sua sponte dismissal] is . . . appropriate if it appears from the face of the complaint that the action is barred, for example by expiration of the statute of limitations.").

Under New York law, the statute of limitations for a defamation claim is one year.  N.Y. C.P.L.R. § 215(3).  In determining when the statute of limitations begins to run on a defamation claim, New York applies the single publication rule: the statute of limitation begins to accrue at the time of the first publication.  *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003).  Plaintiff filed this action on July 31, 2020.  *See* Compl.  Although the precise defamatory action alleged is somewhat unclear, the fulcrum of Plaintiff's claims stems from his arrest and indictment.  Plaintiff was arrested on January 25, 2018, and indicted on March 1, 2018.  Thus, the statute of limitations period on Plaintiff's defamation claims ended on March 1, 2019.  Consequently, Plaintiff's claim is untimely and is therefore dismissed.

### 8. *Monell* Liability

Having dismissed Plaintiff's underlying claims for constitutional violations, any claims against the defendant Nassau County are also dismissed. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("if [individual defendant] inflicted no constitutional injury on [plaintiff], it is inconceivable that [the municipal defendant] could be liable"); *Torraco v. Port Auth. of N.Y. and N.J.*, 615, F.3d 129, 140 (2d Cir. 2010); *Escalera v. Lunn*, 361 F.3d 737, 748-49 (2d Cir. 2004).

## B. Medical Center's Motion for Summary Judgment

Plaintiff brings three causes of action against Defendant Medical Center: false imprisonment for violation of Plaintiff's Fourth and Fourteenth Amendment rights, and a claim for legal fees under Section 1988. *See* Compl. ¶¶ 54, 179. Plaintiff alleges that Defendant Medical Center and its employees violated his constitutional rights by submitting false reports of child sexual abuse, leading to Plaintiff's arrest and indictment.[6]

The facts giving rise to Plaintiff's claims against Defendant Medical Center are identical to those against the County Defendants. Therefore, having found probable cause existed for Plaintiff's arrest and imprisonment, and that no underlying constitutional violation occurred, Plaintiff's various Section 1983 claims against Defendant Medical Center are dismissed. *See* Section A.7 *supra*.[7] Further, Plaintiff's claims for attorney fees under Section 1988 fail, as this

---

[6] Nassau County Medical Center is "part of the Nassau Health Care Corporation which is a public benefit Corporation pursuant to the Laws for the State of New York." Med. Ctr. Answer ¶ 14, ECF 13. A public benefit corporation is not a municipal agency, but rather a "separate, suable entity." *Harris v. Viau*, 17-CV-9746 (KMK), 2019 WL 133162, at *1 (S.D.N.Y. Mar. 25, 2019). Therefore, the Medical Center and its employees are state actors for the purposes of Section 1983. *See Rookard v. Health and Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983); N.Y. Pub. Auth. Law § 1261 (16) (defining "state agency" to include any "public benefit corporation . . . of the state").

[7] Although Plaintiff names the Medical Center's employees, "John Doe and Jane Doe Doctor(s) and Sane Nurse(s)", as individual defendants, he does not bring any claims against them. *See generally*, Compl.

section does not create a separate cause of action.  *Weiss v. Violet Realty, Inc.*, 150 F. App'x 119, 120 (2d Cir. 2005).

<h1 style="text-align:center">CONCLUSION</h1>

For the reasons discussed, the County Defendants and Defendant Medical Center are grated summary judgment, and the case is dismissed in its entirety.

**SO ORDERED.**

                                                   _/s/_____
                                                   ORELIA E. MERCHANT
                                                   United States District Judge

February 24, 2025
Brooklyn, New York